WEBSTER v. GOOLSBY.

Opinion delivered July 2, 1917.

1.  PLEADING AND PRACTICE—STIPULATION AS TO FACTS.—Where parties
    file a stipulation in justice court agreeing to certain facts, without
    limitation upon the use of the writing, it may be used at any stage of
    the litigation and after appeal to the circuit court.

2.  PLEADING AND PRACTICE—AGREED STATEMENT OF FACTS—WITH-
    DRAWAL.—Where an agreed statement of facts is filed, it can be with-
    drawn only with the court's permission, otherwise it remains binding
    on the parties (except where fraud has been practiced).   The trial
    court has a discretion to permit or refuse the annulment of a stipula-
    tion.

Appeal from Miller Circuit Court; *George R. Hay-
nie,* Judge; reversed.

*Will Steel,* for appellant.

1.   There was no evidence upon which to base in-
struction No. 2, for plaintiff, submitting the question as
to whether or not "plaintiff drew upon defendant for

an amount not exceeding what was due him'' upon the first three cars which were shipped. This issue should not have been submitted for the further reason that the contract, as shown by the agreement and stipulation of counsel, expressly provided that invoices and bills of lading should be mailed to Webster, and Goolsby had no right to make drafts under his contract.

Goolsby accepted settlement for 80 per cent. of said three cars, which was materially less than the total of the two drafts.

Another objection was, it submitted the question as to the good faith of plaintiff, etc.

2. It was also error to permit the jury to disregard the stipulation of counsel filed in court. This stipulation was binding in the trial in the circuit court. 85 Ark. 605; 4 Wigmore on Ev., § § 2588, 2590-3; Greenl. on Ev. (14 ed.), § 186; 24 Am. Rep. 40; 68 Me. 215; 36 Cyc. 1283, 1292; 16 *Id.* 964-5, 973-C; 145 S. W. 1086; 21 Am. Dig., § 18; 68 So. 865; 194 Ill. App. 232; 1 R. C. L. 778; 19 L. R. A. 95.

3. The testimony of H. M. Barney, plaintiff's attorney, should have been excluded. It prevented the case from being tried *de novo* in the circuit court on its merits. 87 Ark. 231.

4. The stenographer's telegrams were admissible as office records and entries made at the time of the transaction. 57 Ark. 415.

5. The verdict was excessive.

*William H. Arnold,* for appellee.

1. Under section 3151, Kirby's Digest, the account stands proven for the amount claimed. The evidence supports the verdict.

2. There is no error in the instructions. Goolsby was acting in good faith and believed he was complying with his contract. 6 R. C. L., § § 324; 331, 333, 342; 97 Ark. 278; 105 *Id.* 353.

3. Parol evidence was inadmissible to vary, qualify or contradict a valid and unambiguous written contract. 95 Ark. 131; 105 *Id.* 50.

4. H. M. Barney's testimony was admissible. The question was fully presented to the jury in instructions for both parties, whether or not the contract was first broken by Webster or Goolsby.

In view of the verdict, the agreement signed by Mr. Barney is immaterial and unimportant. Failure of one party to a contract to comply with its terms releases the other from compliance with it. 65 Ark. 320; 97 *Id.* 522. See also 80 *Id.* 528; 86 *Id.* 103.

SMITH, J. This suit was commenced by appellee in the court of a justice of the peace to recover a balance alleged to be due upon three cars of lumber shipped to appellant by appellee. The contract of sale was evidenced by a writing, the material portions of which are as follows:

"Potts Camp, Miss., Aug. 12, 1913.

"To John M. Goolsby, Myrtle, Miss.:

"Fifty M. Ft. ash lumber at prices named F. O. B 15c rate to Evansville, Ind., for immediate shipment. (Dimensions described.)

"Mr. Goolsby agrees to ship this stock and guarantee the inspection. National lumber rules to govern the inspection. In case of dispute, National man to be called on to go through stock. Terms 80 per cent. upon receipt of B-L and invoice. Balance when I receive returns from customers. Bill everything to N. A. Webster from N. A. Webster at Evansville, Ind., till further notice (Goolsby has copy of this; mail him formal order) and mail me B-L and invoice, show routing on each B-L. Stock can be either green or dry, but must be well mfg. of good widths and lengths. In event you ship green oak, put sticks between each course to prevent staining and damaging.

"N. A. Webster,

"Per J. W. Runyan.

"Accepted, J. M. Goolsby.

‴Also one or more cars plain and Qtd. oak at prices named delivered on an Evansville rate of frt. same instructions apply as given on ash.

"Plain Red & W. Green or dry."

The clause in the contract, "Also one or more cars plain and Qtd. oak," was indefinite, and, according to appellant, this question was taken up with appellee by a Mr. Runyan, who was appellant's agent and who had acted for appellant in making the original contract of sale, and, after some correspondence and negotiation, it was agreed that the contract should be construed as meaning 100,000 feet of oak at the prices set out in the contract.

Three cars of lumber were shipped under the contract, each containing some oak, and, together, they contained the equivalent of one car of oak. The date of the shipment of these cars is one of the questions of fact involved in the case. Upon the shipment of the first car, appellee drew on appellant, with invoice and bill of lading attached, and payment of the draft was refused by appellant upon the ground that appellee had no authority to draw. The lumber had been shipped under an open shipment, that is, it had not been shipped C. O. D., and all the cars were shipped in the same manner, and, in due course, were delivered to appellant's customer at their destination. One of the issues in the case was the authority of appellee to draw the drafts with invoices and bills of lading attached. Appellant testified that he had contracted against the right of appellee to draw on him with bill of lading and invoices attached, and that these writings should be mailed to him so that he might have time to thoroughly check over the invoices and ascertain that drafts had not been drawn for more than 80 per cent. of the value of the lumber covered by the invoice and to make it unnecessary to have an inspector on the ground as the lumber was being loaded out.

Whatever may have been the reason leading to the use of the language employed, it appears that appellant's construction of the contract is correct, and that under its

terms appellee had no right to draw on appellant with the invoices and bills of lading attached, and the court should have so told the jury. It is said, however, that after a controversy arose over the first car shipped a conference was had between appellee and Runyan, when it was then agreed that shipment should continue under the contract, and that appellee might draw for a sum not exceeding 80 per cent. of the invoice price of the lumber shipped. It was competent for the parties to subsequently amend their written contract by changing its provisions, and if it was so changed as to confer the right to draw with invoice and bill of lading attached, instead of mailing them to appellant, then appellee thereafter had the right to draw with invoice and bill of lading attached.

At the trial in the justice of the peace court the following stipulation was entered into:

"Agreement on Partial Statement of Facts.

"The undersigned attorneys representing respectively the plaintiff and the defendant in the above styled cause hereby agree upon and admit the following facts and waive formal proof thereof in the trial of this cause: 'That in the contract between the parties hereto, said John M. Goolsby sold and agreed to furnish said N. A. Webster, 50,000 feet of ash lumber and 100,000 feet of plain and quartered oak lumber, that the contract as to the said ash lumber is the written contract attached hereto marked Exhibit "A" and made a part hereof,' and that said contract was signed thereon as indicated by said J. M. Goolsby, that said contract was the contract between said parties as to said plain and quartered oak lumber except the phrase in said contract, 'One or more cars plain and quartered oak,' was not satisfactory and to explain, make definite, and in lieu thereof it was agreed between the parties hereto, in which agreement J. W. Runyan represented the defendant as his agent, that said phrase in said contract should read and mean and in lieu of said phrase '100,000 feet of plain and quartered oak lumber.'

"That in figuring the amount due on the lumber shipped in three cars shipped a mistake of $100 in the addition was made and that said mistake was first called to J. W. Runyan's attention in a letter hereto attached marked Exhibit 'B' and made a part hereof, and that said Runyan also received two other letters which are hereto attached and said letters were by said Runyan turned over to said Webster, said two letters being marked Exhibits 'C and D' hereto.

"W. H. Arnold and H. M. Barney,
"Attorneys for Plaintiff.
"Will Steel,
"Attorney for Defendant.

"Filed 9th of November, 1915.
"J. C. Edwards, J. P."

It is admitted that Mr. Barney, acting for Goolsby, was his attorney at the time, and had all the authority possessed by an attorney, and that nothing was said about limiting the use of the stipulation to the trial in the justice court, although Mr. Barney testified this was his intention at the time, and that he entered into the stipulation for the purpose only of securing a trial there, as the cause had been pending in the justice court for some time. It is true that, after the trial in the justice court, appellant took the deposition of Runyan; but no part of the deposition related to the matters covered by the stipulation. Appellant's attorney explains his failure to take a deposition upon these questions by saying that those matters were covered by the stipulation, and he considered it unnecessary to do so.

Three cars of lumber were shipped, and two drafts were drawn, and one of the issues of fact was whether the last draft covered all three of the cars, or only the first two. The relevancy of this question is that, if the draft covered only two cars, instead of three, it was drawn for an excessive amount, in that it exceeded 80 per cent. of the invoice price of the lumber shipped. The quantity and value of the lumber is not now in dispute, but the amount shipped did not equal the amount covered by the.

contract, and as appellant had sold the lumber which he had contracted to buy from appellee, he was required to purchase this lumber to fill his own contracts of sale at a price greater than that named in his contract with appellee, and he filed a counterclaim in which he asked judgment for this difference in price by way of damages. The quantity of oak covered by the contract became a highly important question, and appellant contends that the stipulation fixed this amount at 100,000 feet, whereas there was admitted in evidence a letter from appellant to appellee confirming the original contract as a sale of one or more cars of oak.

When evidence was first offered tending to contradict the recitals of the stipulation, counsel for appellant objected to any evidence having that purpose upon the ground that the truth of the matters covered by the stipulation was concluded by the recitals of that instrument. Counsel for appellee contended that the stipulation covered only the trial in the justice court, and the court heard the evidence set out above on that issue, but reserved a decision at the time, and finally allowed the jury to consider this stipulation, along with all of the other evidence in the case, as determining what the truth was in regard to the facts there recited. This ruling was made after the introduction of the evidence was concluded and the instructions were being settled. Counsel for appellant said, "Your Honor, I understood that the court was to instruct the jury relative to my request that the written agreement of counsel filed in the lower court with the exhibit attached was the contract between the parties hereto, and I would like for the court to instruct the jury that this written agreement is the contract between Goolsby and Webster, and is binding in this trial."

This request was refused, and that action of the court is assigned as error.

(1) We think this action of the court was erroneous. There was either a stipulation or there was none. If there was such a stipulation, it should have been given effect. It would be, and is, an anomalous situation to

have litigants stipulate as to what the facts are for the purposes of a trial, and then to admit evidence contradicting the recitals of such stipulation. There was a stipulation. This fact is not questioned; but it is said that it was intended for use in the trial in the justice court only. Presumptively this is not true. The stipulation contained no such limitation, and, in the absence of such limitation, the presumption is that it was intended for use at any stage of the litigation. 16 Cyc., pp. 973, 974. In 1 Ruling Case Law, page 778, paragraph 5, it is said: "Where parties to a case agree to submit the same for decision upon an agreed statement of facts and nothing is said in the agreement to the contrary, each party is absolutely bound and concluded by the statement of facts, thus agreed to, so far as the trial in which the stipulation made is concerned, and where the agreement is not expressly limited to use in the trial in which it is made, it is admissible in evidence as an admission in any other trial or litigation between the same parties where the same issues are involved, but it is not absolutely binding and conclusive upon the parties in other litigation."

(2)   The authorities are to the effect that the court may permit parties who have entered into a stipulation to withdraw therefrom and to annul the stipulation. But permission to this effect must be obtained, and valid cause therefor shown, and, in the absence of such permission obtained and cause shown, the stipulation remains binding on the parties thereto, and all the parties thereto have the right to assume that its terms will not be questioned, and the right to its use will not be resisted. The rule, of course, is otherwise where fraud or imposition was practiced in the procurement of the stipulation, for in such cases there is no stipulation. But it is not here contended that any fraud or imposition was practiced in the preparation of the stipulation in this case. A number of cases on this subject are cited in the note to the case of *Northern Pacific R. R. Co.* v. *Barlow,* 20 N. D. 197, 126 N. W. 233, 24 Am. & Eng. Ann. Cas., p. 763. These cases hold that the trial courts have a discretion in deter-

mining when and under what circumstances parties will be permitted to annul their stipulations, and announce the rule to be that the discretion of the court on this subject will not be reversed unless an abuse of this discretion is shown.

This appears to be the proper, as well as the general, rule. Here the court did not annul the stipulation, but let the jury consider it along with all the other evidence in the case in determining what the agreement between the parties was. And this action was erroneous.

As tending to show the number of cars of lumber covered in one of the drafts drawn on appellant by appellee, appellant undertook to offer in evidence a telegram to him from his stenographer, and his reply thereto, but this evidence was excluded by the court, and that action is assigned as error. We think the court properly excluded this evidence, as appellee was in nowise a party to this correspondence, and the same is objectionable as a self-serving writing.

A number of other questions are discussed in the briefs, but, in view of what we have said, we find it unnecessary to discuss them here.

The judgment will be reversed and the cause remanded for a new trial.